FILED

**NOT FOR PUBLICATION**

MAY 21 2026

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>JAMES LAWRENCE PEARSON,<br>Debtor. | BAP Nos. CC-25-1086-GCN<br>CC-25-1087-CGN<br>(Cross-Appeals) |
| JAMES LAWRENCE PEARSON,<br>Appellant/Cross-Appellee, | Bk. No. 8:22-bk-11862-SC |
| v. | Adv. No. 8:23-ap-01011-SC |
| ROBERT NICHOLS; CORA NICHOLS,<br>Appellees/Cross-Appellants. | **Order Re Publication** |

Before: GAN, CORBIT, and NIEMANN, Bankruptcy Judges.

The Panel has decided that redesignation of its Memorandum issued February 27, 2026, as a published Opinion is appropriate. Therefore, the disposition of the appeal is ORDERED PUBLISHED. A copy of the Opinion is attached to this order.

A Clerk's Notice regarding nonsubstantive changes to the decision will be entered concurrently with this order.

FILED

FEB 27 2026

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>JAMES LAWRENCE PEARSON,<br>　　　　　　Debtor. | BAP Nos. CC-25-1086-GCN<br>CC-25-1087-CGN<br>(Cross-Appeals) |
| JAMES LAWRENCE PEARSON,<br>　　　Appellant/Cross-Appellee, | Bk. No. 8:22-bk-11862-SC |
| v. | Adv. No. 8:23-ap-01011-SC |
| ROBERT NICHOLS; CORA NICHOLS,<br>　　　Appellees/Cross-Appellants. | **OPINION** |

Appeal from the United States Bankruptcy Court
for the Central District of California
Scott C. Clarkson, Bankruptcy Judge, Presiding

APPEARANCES:

Jenny L. Doling of J. Doling Law, PC argued for appellant/cross-appellee;
Vanessa M. Haberbush of Haberbush, LLP argued for appellees/cross-appellants.

Before: GAN, CORBIT, and NIEMANN, Bankruptcy Judges.

GAN, Bankruptcy Judge:

## INTRODUCTION

These appeals require us to determine whether § 523(a)(8)(B)[1] allows a bankruptcy court to hold nondischargeable a portion of a private student loan where the purpose of the loan was to pay both qualified and non-qualified higher education expenses. Section 523(a)(8)(B) excepts from discharge any private educational loan that is a "qualified education loan" as defined in § 221(d)(1) of the Internal Revenue Code ("IRC"). That statute defines a qualified education loan as "any indebtedness incurred by the taxpayer solely to pay qualified higher education expenses."

The bankruptcy court determined that chapter 7 debtor James Lawrence Pearson borrowed $331,500 from his then parents-in-law, Robert and Cora Nichols (together "the Nichols"), to finance undergraduate courses at St. George's University ("SGU") and medical school expenses at St. George's University School of Medicine ("SGU School of Medicine") in Grenada. Because only the expenses at SGU School of Medicine were "qualified higher education expenses," the court held nondischargeable only the portion of the loan incurred for expenses at SGU School of Medicine.

The court reasoned that the phrase "any indebtedness" in IRC § 221(d)(1) allowed it to separately consider the portion of the loan used for

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

qualified higher education expenses and hold it nondischargeable because that amount was incurred "solely" to pay such expenses.

We disagree with the court's interpretation. Section 523(a)(8)(B) excepts from discharge an educational loan that *is* a qualified education loan, not some portion of the loan. And IRC § 221(d)(1) defines a qualified education loan as one incurred solely to pay qualified higher education expenses. The bankruptcy court's interpretation of the statute does not give effect to the term "solely."

The loan at issue was a multi-purpose loan; it was not incurred solely to pay qualified higher education expenses. The educational loan here *is not* a qualified education loan; consequently, it does not satisfy the criteria for nondischargeability. The statute does not permit a court to hold a portion of a loan nondischargeable where such loan does not meet the statutory definition. Accordingly, we REVERSE.

**FACTS[2]**

**A.    Prepetition Events**

In March 2012, Pearson became engaged to Stephanie Nichols, the daughter of Robert and Cora Nichols. Pearson had recently graduated from law school but expressed an interest in pursuing a medical degree. The Nichols agreed to provide the necessary funds for Pearson to obtain a medical degree. Between August 2012 and December 2016, the Nichols

---

[2] The parties do not dispute the relevant facts which we take largely from the bankruptcy court's memorandum decision.

3

made transfers to Pearson totaling $331,500. According to the Nichols, Pearson agreed to repay the loan once he finished medical school and started working. Pearson claimed that the Nichols gifted the funds to the couple.

Pearson and Stephanie Nichols married in July 2012, and they moved to Grenada so Pearson could complete several prerequisite undergraduate science courses at SGU ("Pre-Medical Education").[3] Pearson finished his Pre-Medical Education in the spring of 2013 and, after taking the MCAT in May 2013, he was admitted to SGU School of Medicine.

Pearson began his medical education in the fall of 2013, and he graduated in June of 2017. During the first year of his medical education, Pearson studied at Northumbria University in Newcastle, England ("Northumbria") as part of a study abroad program between SGU School of Medicine and Northumbria. He spent his second year in Grenada, and during the last two years of his medical education, he completed his clinical training in Redlands, California. While obtaining his medical education, Pearson was a full-time student, and he paid all tuition and fees to SGU School of Medicine.

---

[3] Pearson testified that in order to apply to medical school, he needed prerequisite undergraduate courses in biochemistry, organic chemistry, and physics. SGU allowed prospective medical students to complete necessary undergraduate science courses, and it offered automatic admission to SGU School of Medicine if they earned a minimum grade point average in those courses and achieved a minimum score on the Medical College Admission Test ("MCAT").

Two years after graduating from SGU School of Medicine, Pearson and Stephanie separated and eventually divorced. The Nichols expected Pearson to repay the loan, but he refused, asserting that the funds were a gift. In 2020, the Nichols filed suit in Los Angeles County Superior Court for breach of oral contract, and they obtained a final judgment against Pearson for $331,500 plus costs.

**B.      Pearson's bankruptcy and the adversary proceeding**

Pearson filed a chapter 7 petition in October 2022. The Nichols filed an adversary complaint seeking declaratory relief that the loan they made to Pearson was a nondischargeable student loan under § 523(a)(8)(B).

Prior to trial, the parties stipulated that: (1) the Nichols made a loan of $331,500 to Pearson which was intended, in part, to be used for Pearson's expenses at SGU School of Medicine; (2) SGU School of Medicine and Northumbria were "eligible institutions" during the years of Pearson's medical education; (3) Pearson was a full time student and taxpayer when he received the loan; and (4) Pearson received the loan funds at about the same time the tuition and related expenses were due, and he paid all tuition and expenses to SGU School of Medicine.

The Nichols argued that the entire loan was incurred to pay qualified higher education expenses because the state court judgment established that Pearson sought the loan only for medical school. Pearson argued that the account summary from SGU evidenced costs far less than the amount

of the loan; thus, the Nichols did not show the loan was incurred solely to pay qualified higher education expenses. Pearson also argued that the SGU School of Medicine/Northumbria program was not eligible for federal aid, and therefore, was not an eligible institution.

After trial, the bankruptcy court entered a written decision holding that the Nichols made a loan to Pearson in the amount of $331,500 for educational purposes, of which $266,876.81 was nondischargeable. The court determined that the loan was an educational loan, but only a portion of the loan satisfied the definition of "qualified educational loan." It reasoned that Pearson was an eligible student because SGU School of Medicine was an eligible institution; it was not relevant that the specific program in which Pearson enrolled was ineligible for federal aid because it is the institution, not the program, which must be eligible.

However, because only SGU School of Medicine—and not the undergraduate university at SGU—was on the Federal School Code List,[4]

---

[4] As discussed below, a qualified education loan must be incurred for "qualified higher education expenses" at an "eligible educational institution." An "eligible educational institution" is an institution "(A) which is described in section 481 of the Higher Education Act of 1965 (20 U.S.C. 1088), as in effect on the date of the enactment of this section, and (B) which is eligible to participate in a program under title IV of such Act." IRC § 25A(f)(2); *see* IRC § 221(d)(1).

Institutions that are eligible to offer programs under Title IV are identified by the Federal School Code List. *See Nunez v. Key Educ. Res/GLESI (In re Nunez)*, 527 B.R. 410, 416 (Bankr. D. Or. 2015) (taking judicial notice of Federal School Code List for relevant years and noting "[t]he School Codes Lists identify '[a]ll postsecondary schools that are currently eligible for Title IV aid.'"); *Wiley v. Wells Fargo Bank, N.A. (In re Wiley)*, 579 B.R. 1, 11 (Bank. D. Me 2017) ("Schools that are eligible to offer programs under Title IV are

the court held that Pearson's expenses for his Pre-Medical Education were not qualified higher education expenses.[5] The court also reasoned that Pearson was not an "eligible student" while completing his Pre-Medical Education because those courses did not lead to a recognized educational credential. The court held that the Nichols demonstrated qualified higher education expenses of $266,876.81, which Pearson paid to SGU School of Medicine for his medical education.

The bankruptcy court looked to Pearson's "stated purpose," rather than how he actually spent the funds, to determine the nature of the loan. The court specifically found that "the loan was incurred to pay for [Pearson's] Pre-Medical Education expenses in addition to his Medical Education expenses."

But the court interpreted the reference in IRC § 221(d) to "any indebtedness" to permit it to consider the portion of the loan used for qualified higher education expenses and hold that amount nondischargeable. The bankruptcy court ultimately held: "Because $266,876.81 was indeed a debt incurred solely to pay for the above identified qualified higher education expenses, it is a qualified education

---

identified by the Federal School Code List."). The Nichols presented evidence that SGU School of Medicine (but not the undergraduate university) and Northumbria were on the Federal School Code List.

[5] The bankruptcy court calculated total education expenses of $306,301.03, consisting of $39,292 in Pre-Medical Education expenses and $266,876.81 in medical education expenses.

loan even though it does not represent the whole amount of the loan made by [the Nichols]." The court entered judgment, and Pearson and the Nichols each appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court err by holding a portion of the loan nondischargeable as a qualified education loan?

## STANDARD OF REVIEW

"We review de novo the bankruptcy court's application of the legal standard in determining whether a student loan debt is dischargeable." *Kashikar v. Turnstile Cap. Mgmt., LLC (In re Kashikar)*, 567 B.R. 160, 164 (9th Cir. BAP 2017) (quoting *Educ. Credit Mgmt. Corp. v. Jorgensen (In re Jorgensen)*, 479 B.R. 79, 85 (9th Cir. BAP 2012)).

Under de novo review, "we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

## DISCUSSION

The parties do not contest any factual findings by the bankruptcy court. Each party contends that the bankruptcy court erred in its interpretation and application of the law.

Pearson argues that the court erred by holding a portion of the loan nondischargeable because: (1) the loan could not have been incurred solely to pay qualified higher education expenses; and (2) because the program he attended at SGU School of Medicine was not eligible for federal aid, it was not an "eligible educational institution," and he was not an "eligible student."

The Nichols argue that the entire loan should be nondischargeable because the purpose of the loan was to fund Pearson's medical education at SGU School of Medicine.

**A.    Law governing nondischargeability of educational loans**

Section 523(a)(8)(B) excepts from discharge "any other educational loan that is a qualified education loan, as defined in [IRC § 221(d)(1)], incurred by a debtor who is an individual." Deciding what constitutes a qualified education loan "requires delving into a nesting doll of statutory definitions." *Mazloom v. Navient Sols., LLC (In re Mazloom)*, 648 B.R. 1, 11 (Bankr. N.D.N.Y. 2023).

The term "qualified education loan" is defined in IRC § 221(d)(1) as:

any indebtedness incurred by the taxpayer solely to pay
qualified higher education expenses—
(A) which are incurred on behalf of the taxpayer, the taxpayer's
spouse, or any dependent of the taxpayer as of the time the
indebtedness was incurred,
(B) which are paid or incurred within a reasonable period of
time before or after the indebtedness is incurred, and

(C) which are attributable to education furnished during a period during which the recipient was an eligible student.

"Qualified higher education expenses" is defined in IRC § 221(d)(2) as:

the cost of attendance (as defined in section 472 of the Higher Education Act of 1965, 20 U.S.C. 1087ll, as in effect on the day before the date of the enactment of the Taxpayer Relief Act of 1997) at an eligible educational institution, reduced by the sum of—
(A) the amount excluded from gross income under section 127, 135, 529, or 530 by reason of such expenses, and
(B) the amount of any scholarship, allowance, or payment described in section 25A(g)(2).

Pursuant to IRC § 221(d)(2), "eligible educational institution" is defined by reference to IRC § 25A(f)(2) which states:

The term "eligible educational institution" means an institution—
(A) which is described in section 481 of the Higher Education Act of 1965 (20 U.S.C. § 1088), as in effect on the date of the enactment of this section [enacted Aug. 5, 1997], and
(B) which is eligible to participate in a program under title IV of such Act.

An "eligible student" is defined by reference to IRC § 25A(b)(3) which provides:

[T]he term "eligible student" means, with respect to any academic period, a student who—
(A) meets the requirements of section 484(a)(1) of the Higher Education Act of 1965 (20 U.S.C. 1091(a)(1))[6], as in effect on the date of the enactment of this section, and

---

[6] Section 484(a)(1) of the Higher Education Act requires a student to:

(B) is carrying at least 1/2 the normal full-time work load for the course of study the student is pursuing.

—————————————

(1) be enrolled or accepted for enrollment in a degree, certificate, or other program (including a program of study abroad approved for credit by the eligible institution at which such student is enrolled) leading to a recognized educational credential at an institution of higher education that is an eligible institution in accordance with the provisions of section 1094 of this title, except as provided in subsections (b)(3) and (b)(4), and not be enrolled in an elementary or secondary school;

(2) if the student is presently enrolled at an institution, be maintaining satisfactory progress in the course of study the student is pursuing in accordance with the provisions of subsection (c);

(3) not owe a refund on grants previously received at any institution under this subchapter, or be in default on any loan from a student loan fund at any institution provided for in part E, or a loan made, insured, or guaranteed by the Secretary under this subchapter for attendance at any institution;

(4) file with the Secretary, as part of the original financial aid application process, a certification, which need not be notarized, but which shall include--

    (A) a statement of educational purpose stating that the money attributable to such grant, loan, or loan guarantee will be used solely for expenses related to attendance or continued attendance at such institution; and

    (B) such student's social security number;

(5) be a citizen or national of the United States, a permanent resident of the United States, or able to provide evidence from the Immigration and Naturalization Service that he or she is in the United States for other than a temporary purpose with the intention of becoming a citizen or permanent resident; and

(6) if the student has been convicted of, or has pled nolo contendere or guilty to, a crime involving fraud in obtaining funds under this subchapter, have completed the repayment of such funds to the Secretary, or to the holder in the case of a loan under this subchapter obtained by fraud.

Finally, cost of attendance includes tuition and fees, room and board, books, materials, supplies, transportation, and miscellaneous personal expenses for enrolled students, "*in amounts determined by the university.*" *Homaidan v. Sallie Mae, Inc. (In re Homaidan)*, 646 B.R. 550, 589 (Bank. E.D.N.Y. 2022) (quoting *Conti v. Arrowood Indem. Co. (In re Conti)*, 982 F.3d 445, 448 (6th Cir. 2020)). It "is not a description of an individual student's personal cost of completing a year of education." *Id.*

In summary, a private educational loan made to an individual is nondischargeable as a qualified education loan only if: (1) it is incurred solely to pay qualified higher education expenses; (2) which are incurred by the debtor, his spouse, or dependent; (3) are paid or incurred within a reasonable time of the debt; (4) are attributable to education furnished while the recipient was an eligible student; and (5) are paid to an eligible educational institution.

Under § 523(a)(8), "the lender has the initial burden to establish the existence of the debt and that the debt is an educational loan within the statute's parameters." *In re Kashikar*, 567 B.R. at 168 (quoting *Roth v. Educ. Credit Mgmt. Corp. (In re Roth)*, 490 B.R. 908, 916-17 (9th Cir. 2013)).

B. **The loan was not a qualified educational loan because it was not incurred solely to pay qualified higher education expenses.**

Although the Nichols made several transfers over a four-year period, the parties stipulated that there was one agreement and one loan.

12

The state court judgment was based on a single breach of oral contract, and it established the amount of the loan at $331,500. Moreover, the bankruptcy court made a factual finding that the transfers were an educational loan in the amount of $331,500.

The bankruptcy court also made factual findings that Pearson's qualified higher education expenses were $266,876.81,[7] and his Pre-Medical Education expenses of $39,292 were not qualified higher education expenses. The parties do not contest the court's factual findings, and we are bound by them.[8] *See* Civil Rule 52(a)(6), made applicable by Rule 7052; *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("[O]n appeal, arguments not raised by a party in its opening brief are deemed waived.").

Pursuant to § 523(a)(8)(B), the loan is nondischargeable if it is a qualified educational loan, and a qualified educational loan must be incurred solely for the purpose of paying qualified higher education expenses. The bankruptcy court's uncontested findings of fact demonstrate the loan was incurred for both qualified and unqualified education expenses. Thus, it cannot be a qualified education loan.

---

[7] Although the "cost of attendance" at SGU School of Medicine, as determined by the institution, may have included amounts in addition to the tuition and fees shown in the account summary, the Nichols did not provide any other evidence of the cost of attendance. The parties do not dispute the court's finding that Pearson incurred qualified higher education expenses of $266,876.81.

[8] The Nichols argue the entire loan should be nondischargeable because they believed the purpose of the loan was to fund Pearson's medical education, but they do not contest the court's finding that "the loan was incurred to pay for [Pearson's] Pre-Medical Education expenses in addition to his Medical Education expenses."

Even if the parties contested the court's findings, they are amply supported by the record. The Nichols began making disbursements under the loan in August 2012, a month after Pearson and Stephanie Nichols married and moved to Grenada so Pearson could begin his Pre-Medical Education. Pearson was not admitted to SGU School of Medicine until after he completed his Pre-Medical Education and achieved a minimum score on the MCAT, which he took in May 2013. The evidence in the record adequately supports the court's finding that the loan was incurred for other purposes besides paying qualified higher education expenses.

**C.  Section 523(a)(8)(B) does not authorize a bankruptcy court to hold a private student loan partially nondischargeable.**

Despite finding "the loan was incurred to pay for [Pearson's] Pre-Medical Education expenses in addition to his Medical Education expenses," the bankruptcy court interpreted the reference in IRC § 221(d)(1) to "any indebtedness" to mean that it could separately consider the portion of the loan used for qualified higher education expenses. It held: "because the language of the statute is broader, addressing not just loans in their entirety but 'any indebtedness,' the Court properly may focus on the amount of indebtedness which clearly was intended solely to pay for qualified higher education expenses." *Memorandum Decision*, p. 46.

The court's analysis is flawed for two reasons. First, § 523(a)(8)(B) excepts from discharge "an educational loan that *is* a qualified education loan." (emphasis added). The statute leaves no room for a court to partition

an educational loan and hold a portion nondischargeable. Either the educational loan is a qualified education loan, or it is not.

Second, the bankruptcy court's interpretation of IRC § 221(d) gives no effect to the term "solely." In every case involving a multipurpose loan, the portion which is intended to fund qualified higher education expenses will be incurred to pay such expenses. The bankruptcy court's construction makes every educational loan nondischargeable to the extent some portion was intended to pay qualified higher education expenses, and it renders meaningless the term "solely."

Section 523(a)(8)(B) requires the entire educational loan to be a qualified education loan, and the plain language of IRC § 221(d) requires a qualified education loan to be incurred for a single purpose: to pay qualified higher education expenses. "[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the texts is not absurd—is to enforce it according to its terms." *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank., N.A.*, 530 U.S. 1, 6 (2000)); *see also Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (explaining that we construe a statute to give effect "to all its provisions, so that no part will be inoperative or superfluous, void or insignificant"). A loan incurred for multiple purposes—and not solely to pay qualified higher education expenses—is not a qualified education loan.

Our interpretation of the statute, which excludes mixed-use loans from the definition of qualified education loan, is consistent with the IRS's interpretation of IRC § 221(d).[9] Section 1.221-1(e)(4) of Title 26 of the Code of Federal Regulations, which includes several examples interpreting the definitions under IRC § 221, provides under example 6:

> Mixed-use loans. Student J signs a promissory note for a loan secured by Student J's personal residence. Student J will use part of the loan proceeds to pay for certain improvements to Student J's residence and part of the loan proceeds to pay qualified higher education expenses of Student J's spouse. Because Student J obtains the loan not solely to pay qualified higher education expenses, the loan is not a qualified education loan.

In addition to the court's factual finding regarding the purpose of the loan, it was necessarily a mixed-use loan because it exceeded Pearson's qualified higher education expenses. *See In re Homaidan*, 646 B.R. at 594 ("[I]f a private student loan exceeds the applicable cost of attendance, then the entire student loan debt is dischargeable . . . ."); *see also Golden v. Nat'l Collegiate Student Loan Tr. 2006-4 (In re Golden)*, 671 B.R. 544, 603-604 (Bankr. E.D.N.Y. 2025). Thus, even if the bankruptcy court did not find that the

---

[9] Although we do not give deference to agency interpretations of statutes, *see Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 412-13 (2004), *overruling Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), we may still "look to agency interpretations for guidance, recognizing the agency's body of experience and informed judgment may give those interpretations the power to persuade." *Murillo-Chavez v. Bondi*, 128 F.4th 1076, 1086 (9th Cir. 2025) (citation modified).

loan was for multiple purposes, we would hold the entire loan

dischargeable because it exceeds the demonstrated cost of attendance.[10]

The bankruptcy court acknowledged *Homaidan* but disagreed with its

conclusion, stating: "To follow [*Homaidan's*] logic, if a lender loaned

$500,000, where $495,000 was for educational purposes and $5,000 was to

buy a car for the student, all of the $500,000 would be dischargeable. That

cannot be right . . . ." *Memorandum Decision*, p. 46 n.89. Though the court

used more egregious figures, its example is identical in substance to

example 6 in 26 C.F.R. § 1.221-1(e)(4). The result may seem harsh, but the

language of the statute is clear, and exceptions to discharge "are to be

construed narrowly so that they are confined to their plainly-expressed

terms." *Bendetti v. Gunness (In re Gunness)*, 505 B.R. 1, 7 (9th Cir. BAP 2014)

(citing *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 275 (2013); *Kawaauhau

v. Geiger*, 523 U.S. 57, 62 (1998)).

The loan does not satisfy the definition of qualified higher education

loan under § 523(a)(8)(B) and IRC § 221(d)(1). Because the Bankruptcy

Code does not permit the court to hold a portion of a loan

nondischargeable where the loan does not meet the statutory criteria, the

court erred by entering judgment in favor of the Nichols.[11]

---

[10] For the same reason, we deny the cross-appeal. Regardless of what the Nichols believed the purpose of the loan to be, it exceeds Pearson's cost of attendance. Thus, it necessarily was a mixed-use loan and excluded from the definition of qualified education loan.

[11] Because we hold that the loan was not a qualified education loan, we do not

## CONCLUSION

Based on the foregoing, we REVERSE the bankruptcy court's judgment and hold that the loan was discharged in its entirety.

---

address Pearson's alternative argument that the study abroad program made SGU School of Medicine not an eligible institution.